# UNITED STATES DISTRICT COURT

**FILED**

for the

DEC 0 1 2015

Eastern District of California

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

|  |  |
|---|---|
| In the Matter of the Search of ) ) ) Box, Inc. accounts ) ) ) | Case No. **2:15 - SW - . 6 2 2 — CKD** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B-2, attached hereto and incorporated by reference**

**SEALED**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2), 2252A | Receipt of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jose Ochoa, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/1/2015

_____
*Judge's signature*

City and state:    Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR A SEARCH WARRANT

I, Jose Ochoa, being duly sworn on oath, depose and state as follow:

1.     I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), presently assigned to the Office of the Assistant Special Agent in Charge (ASAC), Sacramento, California.  In 2003, I received training as a Special Agent (SA) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I completed the Immigration Officer Basic Training Course (IOBTC), Police Training, and the Criminal Investigator Training Program (CITP).  In 2004, I received further training from former U.S. Customs instructors to include, but not limited to the area of child pornography and child exploitation investigations.   I am currently assigned to Group 3 which investigates federal violations involving Counter Proliferation, Intellectual Property Rights (IPR), Internet Crimes, and Financial Crimes.  Prior to this group, I was assigned to investigate violations related to the possession and distribution of child pornography, to include persons utilizing peer-to-peer networks to obtain and/or make available for distribution images of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252.  My duties as a Special Agent include executing and serving federal search warrants, subpoenas and summonses, and investigating violations of federal law.  I have been employed as a Special Agent with HSI for twelve (12) years.

2.     I have received training in the area of child pornography and child exploitation investigations, and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C.§ 2256(2)) in all forms of media, including computer media.  I have applied for and received anticipatory search warrants relating to the production and distribution of controlled substances and I have been the

1

affiant on search warrants within the Eastern District of California for evidence of crimes of human smuggling and child pornography. I have participated in numerous child exploitation search warrants (both federal and with the Sacramento Valley Internet Crimes Against Children (ICAC) Task Force) involving the use of computers and Internet, and have assisted in the gathering of evidence during execution of those warrants. I have also assisted with the interviews of individuals suspected of receiving and/or distributing child pornography. I am authorized to investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

3.    Your affiant submits this application and affidavit under Rule 41 of the Federal Rules of Criminal Procedure in support of a search warrant authorizing the search of information associated with the following "**TARGET ACCOUNTS**:"

    a.  The cloud services accounts associated with the email addresses mwinton80@gmail.com and misterbullet6@gmail.com that are stored at premises controlled by Google Inc. ("Google"), an email and cloud services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043;

    b.  The cloud services accounts associated with the email addresses mwinton80@gmail.com and misterbullet6@gmail.com that are stored at premises controlled by Box Inc. ("Box"), an online file sharing and cloud service provider headquartered at 4440 El Camino Real, Los Altos, CA 940222; and

    c.  The account associated with email address mwinton80@gmail.com that is stored at premises controlled by Facebook Inc. ("Facebook"), a social networking company headquartered at 151 University Avenue, Palo Alto, CA 94301.

4.      The information to be searched is described in the following paragraphs and in Attachment A.  I anticipate executing these warrants under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Box, Inc., and Facebook Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachments B-1, B-2, and B-3.  Upon receipt of the information described in Section I of Attachments B-1, B-2, and B-3, government-authorized persons will review that information to locate the items described in Section II of Attachment B-1, B-2, and B-3.

5.      The affiant believes that located within the **TARGET ACCOUNTS** there is evidence, fruits, and instrumentalities relating to the knowing possession, distribution, and transportation of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.

6.      The statements in this affidavit are based in part on information provided by HSI Special Agent Patrick M. McCall, other law enforcement agents, as well as my own investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of a violation of 18 U.S.C. §§ 2252 and 2252A are presently located at the **TARGET ACCOUNTS**. Furthermore, there have been no other attempts that I am aware of to obtain the fruits, evidence and instrumentalities sought in this warrant directly from the **TARGET ACCOUNTS.**

### STATUTORY AUTHORITY

7.      This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A, relating to material involving the sexual exploitation of minors.  Those violations include:

a.  18 U.S.C. § 2252(a)(1) prohibits knowingly transporting or shipping, using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce, by any means including by computer or mail, any visual depiction of a minor engaging in sexually explicit conduct.

b.  18 U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, provided the visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

c.  18 U.S.C. § 2252(a)(4) prohibits knowingly possessing or knowingly accessing with intent to view, one or more books, magazines, periodicals, films, videotapes or other matter which contain any visual depiction that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate of foreign commerce, or which were produced using materials which have been mailed or so shipped or transported, by any means including by computer, in interstate or foreign commerce, or that were produced using materials that had traveled in interstate or foreign commerce, if the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct.

d.  18 U.S.C. § 2252A criminalizes similar conduct regarding the transportation, distribution, and possession of child pornography, as defined at 18 U.S.C. §

2256(8).  This is distinct from 18 U.S.C. § 2252, which criminalizes conduct involving visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(1), (2), and (5).

## DEFINITIONS

8.  For purposes of this warrant, relevant specialized and technical terms are defined as follows:

a.  The term "minor," "sexually explicit conduct," "visual depiction," "producing," "child pornography," and "child erotica" as used herein, are defined as set forth below:

   i.  Minor is defined as any person under the age of eighteen years.  18 U.S.C. § 2256(1).

   ii.  Sexually explicit conduct means actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.  18 U.S.C. § 2256(2).

   iii.  Visual depiction includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.  18 U.S.C. § 2256(5).

   iv.  Producing means producing, directing, manufacturing, issuing, publishing, or advertising.  18 U.S.C. § 2256(3).

   v.  Child pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where   – (A) the

production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct[.] 18 U.S.C. § 2256(8).

vi. Child erotica are images depicting minors in the nude or scantily clad in age-inappropriate clothing, striking sexually provocative poses intended to illicit a sexual response.  The images may not meet the definition of sexually explicit conduct, but are often found in child pornography collections.

b. Technical terms are defined as follows:

i. The term "computer" is defined under 18 U.S.C.§ 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to operating in conjunction with such device."

ii. Computer hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes, but is not limited to, any data processing devices (such as central processing units, self-contained laptop and notebook computers, hand-held electronic organizers, personal digital assistants, and WebTV units), removable media, internal and external storage devices (magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices), and related communication devices such as

modems, cables, connectors, programmable telephone dialing or signaling devices, and electronic tone-generating devices, and any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locations.

iii. A system peripheral is a piece of equipment that sends data to, or receives data from, a computer. Keyboards, mouses, cameras, webcams, video cameras, printers, scanners, plotters, video display monitors, and certain types of facsimile machines are examples of peripherals.

iv. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

v. Computer-related documentation consists of written recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

vi. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (string of alphanumeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, cards, and circuit boards. Data security software or digital code may include a programming code that creates "test" keys or "hot" keys, which perform certain preset security functions when

touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

vii.  Storage media includes any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information.  Examples of storage media include diskettes, CD-ROMs, DVDs, magnetic tapes, ZIP disks, JAZ disks, thumb drives, and EPROMS.

viii.  The Internet is defined as a non-commercial, worldwide network of computers.  It is a self-governing network devoted mostly to communication and research and has millions of users worldwide.  The Internet is not an online service but a collection of tens of thousands of computer networks, online services, and single user components.

ix.  Internet Protocol (IP) is the primary protocol upon which the Internet is based.  It allows information to travel through multiple networks on the way to its final destination.

x.  An IP address is a unique number assigned to every computer directly connected to the Internet (for example 190.25.240.1).  The IP address consists of four parts, is unique to each machine, and can be used to identify a particular machine on the network, at a particular time and date.

xi.  An Internet Service Provider (ISP) is a business that allows a user to connect to the Internet through its computers for a fee.  Internet Service Providers usually provide an Internet connection, an electronic mail (e-mail) address, and sometimes Internet browsing software.  A user also may connect to the Internet through a commercial online service such as CompuServe or America Online (AOL).  With this

8

service, users may also have access to other features such as chat rooms and searchable databases.

xii. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations. Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

xiii. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file

transfer logs list detailed information concerning files that are remotely transferred.

xiv.  "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

xv.  A "JPEG" is a graphic image file.  Other known graphic image files include, but are not limited to, "GIF," "TIFF," RAW," and "BMP."

xvi.  An "MPEG" is a video image file.  MPEG files are generally larger than JPEG files and require the user to have a computer with sufficient processor speed, internal memory, and empty hard disk space.  MPEG viewer software is also needed to play the files.

xvii.  The Uniform Resource Locator (URL) is the address of a resource or file located on the Internet, also called a "domain name."

xviii.  A chat room is a site on the Internet where a number of users can communicate in real time. A chat room is typically dedicated to a particular topic. Users type their messages with a keyboard and the entered text will appear on the monitor, along with the text of the other chat room visitors.  Individuals in a chat room have the ability to invite other users within the chat room to private communication sessions which are thereafter strictly between the two users.

xix.  A webcam is a video capture device connected to a computer or computer network. The video captured by the device is broadcast over the Internet to be viewed by other Internet users in real time. The term "Webcam" can also be used to describe a file transfer between two individuals on the Internet. An individual playing a video file saved to their own computer can broadcast the video to another user's computer screen through an Internet connection.

xx. Screen capture software is a software application that copies what is currently displayed on a user's computer screen to an electronic file or printer. The electronic file can then be viewed as a video. This video depicts everything that was displayed on the original user's computer screen. This software can record real time chat sessions, key strokes, mouse movement, video and audio displayed on the user's screen.

xxi. In addition, as used in this affidavit, "records," "documents," and "materials" include items in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, electrical, electronic, and magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and data security devices.

## KIK MESSENGER APPLICATION

9.     The Kik Messenger application is primarily a social media mobile device platform designed and managed by Kik Interactive Incorporated, a Waterloo, Canada based company, for the purpose of mobile messaging and communication. To use this application, a user downloads the mobile messaging application via an applications service such as the Google Play Store, Apple Itunes, or other similar mobile application provider. Once downloaded and installed, the user is prompted to create an account and a username. This username will be the primary account identifier. The user also has a display name, which will be what other users initially see when transmitting messages back and forth. As part of the account creation process, Kik users are asked to supply a valid email address, create a password, provide an optional date of birth, and user location.   The user also has the option of uploading a "profile avatar" that is seen by other users   Once the Kik user has created an account, the user is able to locate other users via a search feature.  The search feature usually requires the user to know the

11

1  intended recipient's username. Once another user is located or identified, Kik users can
2  send messages, images, and videos between the two parties.

3      10.     Kik Messenger also allows users to create chat rooms, of up to 50 people, for
4  the purpose of communicating and exchanging images and videos. These rooms are
5  administered by the creator who has the authority to ban and remove other users from
6  the created room. According to Kik Messenger, more than 40% of the Kik users chat in
7  "groups" and approximately 300,000 new groups are created every day. These groups are
8  frequently created with a "hashtag" allowing the group or chat to be identified more
9  easily. Once the group or chat is created Kik users have the option of sharing the "link"
10 with all of their contacts or anyone they wish.

11     11.     Kik Messenger users frequently advertise their Kik usernames on various
12 social networking sites in order to meet and connect with other users. In some cases, Kik
13 also provides various avenues, such as dating sites and social media applications, for
14 meeting other users. HSI undercover agents observed, in various chats, that many of the
15 users stated they felt safe using Kik Messenger as a means of trading child pornography
16 and for other illegal activities due to the fact that Kik is a Canadian based company and
17 not subject to the same United States laws. HSI undercover agents have noted messages
18 posted in Kik Messenger chat rooms relating to the enforcement, deletion, or banning of
19 users and rooms by Kik Messenger for the purpose of exchanging or distributing child
20 pornography. HSI agents noted the comments to include the continued creation of new
21 rooms and new user accounts to circumvent Kik Messengers enforcement efforts.

22                    **HSI INVESTIGATION IN WILMINGTON, DELAWARE**

23     12.     On April 19, 2015, HSI SA McCall signed into an undercover Kik user
24 account in Wilmington, Delaware in order to conduct child exploitation investigations on
25 the Kik Messenger application. Using a device connected to the Internet, SA McCall
26 signed into the undercover Kik Messenger account and saw that a user named
27 "snuggler8" had posted three videos of child-related sexually explicit material in the Kik
28

1  Messenger chat room "#vyoung" on April 18, 2015, at approximately 8:36 A.M.  SA

2  McCall was able to download and save this image to an undercover device.  The files

3  posted to the Kik Messenger chat room, which were downloaded and received directly

4  from user "snuggler8," depicted children engaged in sexually explicit conduct including

5  sexual abuse of children by adults, and/or children engaging in sexual activity with other

6  children, and/or children posing nude in sexually explicit poses.

7      13.    On August 24, 2015, a U.S. Immigration and Customs Enforcement

8  summons was served on Kik relating to the user "snuggler8."

9      14.    On August 25, 2015, Kik responded to the subpoena and identified the user

10  subscriber account with the following account information:

        User name: snuggler8
        First name: Enjoying
        Last name: Life
        Email: mwinton80@gmail.com
        IP's used: 24.7.161.44
        Location: US
        Registered: 2013/11/15 11:00:14
        Device: Android
        Model# Lenovo B8080-F

15      15.    A query of the American Registry for Internet Numbers ("ARIN") online

16  database revealed that the Internet Protocol ("IP") address 24.7.161.44 was registered to

17  the Internet Service Provider Comcast Communications.

18      16.    On September 1, 2015, a U.S. Immigration and Customs Enforcement

19  summons was served on Comcast Communications relating to IP address 24.7.161.44 that

20  was used to access the Kik Messenger application.

21      17.    On September 2, 2015, Comcast Communications responded to the summons

22  and identified the subscriber account to which the target IP address 24.7.161.44 was

23  assigned as: Dennis Boyle, 9010 Kirsten Court, Orangevale, California 95662.  The

24  information showed that the account was currently active and listed email address/user

25  identifications of "dennisboyle5770" as being associated with the account.

18. On September 7, 2015, using a publicly available website, SA McCall determined that the address at 9010 Kirsten Court, Orangevale, California 95662 listed a Dennis Boyle as a resident.

## HSI SACRAMENTO INVESTIGATION

19. On October 9, 2015, your affiant reviewed employment information and determined Dennis BOYLE's current employment is with the California Highway Patrol on 601 N 7th Street, Sacramento, CA 95811.

20. Your affiant reviewed the Comcast Communications information provided by SA McCall and confirmed that the subscriber for the suspect IP address 24.7.161.44, assigned on 8/18/2015 at 08:44 AM ET, was Dennis BOYLE of 9010 Kirsten Court, Orangevale, CA 95662. This record also list the above phone number, 916-508-1XXX, on file for Dennis BOYLE's account.

21. Your affiant also reviewed CA Department of Motor Vehicles (DMV) records and determined that BOYLE's mailing address as 9010 Kirsten Court, Orangevale, CA 95662. DMV records also show two vehicles, bearing license plate numbers 96561F1 and 4YED994 (Expired 7/2/15), registered to BOYLE at the 9010 Kirsten Court address.

22. On October 15, 2015, your affiant reviewed customer information from the Sacramento Municipal Utility District (SMUD) and determined that the customer on file at 9010 Kirsten Court, Orangevale, CA 95662 was Dennis BOYLE and Amy Rollings. The phone number on file is 916-508-1XXX and the service start date for this location was May 3, 2013.

23. On October 16, 2015, at approximately 1445 hours, your affiant drove by BOYLE's residence located at 9010 Kirsten Court, Orangevale, CA 95662. Your affiant observed a 2012 Toyota Tundra pickup truck, tan in color, bearing license plate #96561F1 parked in the driveway. CA Department of Motor Vehicles records show this vehicle is registered to BOYLE at this same address. This residence is located on a court; it is a single story residence tan in color with white trim, and a three car garage. The front door

14

1 is dark in color and has a white screen door. The address numbers "9010," black in color,

2 are affixed to the trim on the side of the single car garage.

3     24.   On October 20, 2015, your affiant examined DVD+R #1358931 provided by

4 SA McCall as part of this investigation.  The following listing represents the three video

5 files that were posted by Kik username "snuggler8" on the Kik Messenger chat room

6 named #vyoung on or about 8/18/15 at approximately 0836 hours.  At this date and time,

7 these files made available on the Kik Messenger chat room #vyoung were continuously

8 associated with IP address 24.7.161.44.  These videos were downloaded by HSI RAC

9 Wilmington, SA McCall, in an undercover capacity:

10         a.   IMG_2243.mp4

11         b.   IMG_2245.mp4

12         c.   IMG_2247.mp4

13     25.   On October 20, 2015, your affiant examined the above listed video files.

14 Video file IMG_2243.mp4 is approximately 1 minute and 14 seconds in length.  The video

15 depicts a nude adult male laying on his back holding his penis.  A nude prepubescent

16 young girl performs oral sex on the adult male.

17     27.   Video file IMG_2245.mp4 is approximately 43 seconds in length.  The video

18 depicts an adult male having sexual intercourse with a young prepubescent girl.

19     28.   Video file IMG_2247.mp4 is approximately 53 seconds in length.  The video

20 depicts a nude adult male laying on his back having sexual intercourse with a young

21 prepubescent girl.  These videos depict child pornography as defined by Title 18 U.S.C. §

22 2256.

23     29.   On October 19, 2015, your affiant received information from SA McCall

24 indicating that Kik username "snuggler8" had posted two videos and one image of child

25 related sexual explicit material on or about 10/18/15 at 1:23 p.m. and 3:02 p.m. EST in

26 the Kik chat room #vyoung.

27

28

30.     On October 29, 2015, SA Jose Ochoa obtained a federal search warrant, 2:15-0594-KJN, for the property located at 9010 Kirsten Court, Orangevale CA 95662, and residence of Dennis Francis Boyle.

31.     On November 3, 2015, at approximately 6:50 a.m., HSI personnel executed the federal search warrant. Dennis Francis BOYLE and Marian Boyle were the only occupants encountered during the search. Both Dennis BOYLE and Marian Boyle were provided a copy of the warrant and advised that they were not under arrest. Multiple computer devices, to include tablets and laptops, and mobile devices were seized.

32.     Your affiant conducted an interview with BOYLE. BOYLE provided the following statements, in summary: He said he works at the California Highway Patrol as a compliance auditor and manager. BOYLE said he was still involved with the Boy Scouts Troop 224 in Antelope, CA. He said his tablet was inside his truck parked on the driveway. BOYLE said that his tablet was password protected. BOYLE said he did not want to provide the password at this time until he talked to an attorney. BOYLE did not want to answer any other questions concerning the tablet or the investigation.

33.     A preliminary computer forensic preview of a Lenovo tablet, S/N: HB04TZWQ, found inside BOYLE's Toyota Tundra, plate #96561F1, revealed the Box and Google Drive applications. A preview of this device also revealed the email accounts mwinton80@gmail.com and misterbullet6@gmail.com. A preview of the Samsung Galaxy S5 mobile device, found on BOYLE's person, revealed depictions of child pornography and the email account mwinton80@gmail.com. The email account mwinton80@gmail.com is linked to BOYLE's Facebook account that contains the user profile of a male teenager named "Mark Winton."

34.     On November 5, 2015, at approximately 1:30 p.m., Jeffrey Scott Hadaway (HADAWAY) arrived at the HSI Sacramento Office at 650 Capitol Mall, 3-100, Sacramento CA 95814 in order to talk with investigators about a child pornography investigation. Based on my investigation of this matter, I know that HADAWAY is or

1  was a family friend of the Boyles and was associated with the Boy Scouts along with

2  BOYLE.  At approximately 1:32 p.m., your affiant took a report from HADAWAY.  HSI

3  SA Luz Dunn was also present in the interview room.  HADAWAY provided the following

4  information, in summary:  HADAWAY told investigators that he had information

5  regarding a child pornography investigation.  HADAWAY said he received a text message

6  on 11/4/15 at approximately 4:18 p.m. from BOYLE.  He said BOYLE wanted to talk with

7  him about a private matter.  HADAWAY said BOYLE arrived at his home at

8  approximately 4:38 p.m., and BOYLE asked HADAWAY for help in destroying evidence

9  from online internet storage space commonly known as "the cloud."

10      35.    HADAWAY said BOYLE told him that a search warrant for child

11  pornography was conducted at his home and that officers took several computers.

12  HADAWAY said BOYLE indicated that officers would not find much on the devices they

13  took.  HADAWAY said BOYLE told him that he had been doing this for a long time, and

14  that everything was on the cloud.  HADAWAY said he asked BOYLE to leave his home

15  and became very upset, so much that he felt like hurting BOYLE and had to leave his

16  own home.  Your affiant contacted HADAWAY to ask him if he could identify the cloud

17  storage sites BOYLE needed help with in destroying evidence.  At approximately 3:14

18  p.m., HADAWAY contacted your affiant and reported that he had learned from BOYLE of

19  two cloud storage sites that BOYLE needed help with in destroying evidence: Google

20  Drive and Box.

21      36.    HADAWAY said BOYLE told HADAWAY to get rid of the Google Drive

22  cloud content associated with accounts mwinton80@gmail.com and

23  misterbullet6@gmail.com.  HADAWAY said BOYLE told HADAWAY the password was

24  "christmas8."  HADAWAY said that BOYLE also asked HADAWAY to get rid of the Box

25  cloud content associated with accounts mwinton80@gmail.com and

26  misterbullet6@gmail.com, which also used the password "christmas8."  (Note: HSI

27  Computer Forensic Agent Nicole Solander accessed the above cloud storage sites for the

28

1  sole purpose of changing the password in order to prevent the destruction of evidence.  SA
2  Solander was able to change the password based on the information provided by
3  HADAWAY.)  At approximately 3:22 p.m., HADAWAY contacted your affiant and
4  reported that he had just received a call from BOYLE asking HADAWAY to destroy
5  BOYLE's Facebook account associated with the email address mwinton80@gmail.com,
6  which also used the password "christmas8."  (Note: HSI Computer Forensic Agent Nicole
7  Solander accessed this site for the sole purpose of changing the password in order to
8  prevent the destruction of evidence.  SA Solander was able to change the password based
9  on the information provided by HADAWAY.).

10      37.    On November 5, 2015, your affiant submitted preservation requests for the
11  Google account misterbullet6@gmail.com; Box accounts misterbullet6@gmail.com and
12  mwinton80@gmail.com; and Facebook account mwington80@gmail.com.  A preservation
13  request for Google account mwinton80@gmail.com was submitted on 11/3/15.  On
14  November 6, 2015, at approximately 5:36 p.m., HADAWAY contacted your affiant via
15  email, and stated that "Dennis" reached out to him asking to "clean something up for
16  Marian."  Based on information obtained during this investigation, your Affiant knows
17  that Marian Boyle is BOYLE's spouse.  At approximately 7:43 p.m., HADAWAY emailed
18  your affiant to report that "Marian" asked him to go over to her home and destroy
19  evidence that is on an older Dell computer.

20                  **GOOGLE AND BOX TECHNICAL BACKGROUND**

21      38.    In my training and experience, I have learned that Google/Box provides a
22  variety of on-line, or "cloud," services including email access, to the public.  Google/Box
23  various cloud services are associated with a single Google account, which is typically
24  associated with a Google email address.  The various cloud services provided by Google
25  are optional, and can be turned "on" or "off" by the user.  In some cases, a user can create
26  a Google account and take advantage of Google's many cloud services without associating
27  it to a Gmail account.  You can preview files from Box's website and even create basic text

28

1   documents in Box.  Like other cloud storage services, you can download a desktop

2   application and sync your files between your hard drive and the cloud.

3       39.    Google/Box offers a variety of services that allows its customer to store

4   documents files and other content online so they can be remotely accessed from

5   anywhere.  Google also has applications that allow its users to communicate with each

6   other through Google Talk which allows instant messaging and voice communications.

7   Google also provides other services, such as calendar services, online file storage, storage

8   of browsing history, locations history, and tools related to the administration of user-

9   created websites.  Beyond the basic cloud storage setup, where you can store just about

10  any kind of file, Box lets you.share files with colleagues, assign tasks, leave comments on

11  someone's work, and get notifications when a file changes.  Box also gives you a lot of

12  control over the privacy of your files.  For example, you can decide who in your business

13  can view and open specific folders and files, as well as who can edit and upload

14  documents.  You can even password-protect individual files and set expiration dates for

15  shared folders.  In my training and experience, the information associated with the

16  various Google/Box services, including the services identified as part of the Target

17  Account, can assist in identifying the user or users of a particular Google/Box account.

18      40.    In my training and experience, providers of cloud services like Google/Box

19  generally ask their subscribers to provide certain personal identifying information when

20  registering for an account.  Such information can include the subscriber's full name,

21  physical address, telephone numbers and other identifiers, alternative email addresses,

22  and, for paying subscribers, means and source of payment (including any credit or bank

23  account number).  In my training and experience, such information may constitute

24  evidence of the crimes under investigation because, for example, the information can be

25  used to identify the account's user or users.

26      41.    In my training and experience, providers of cloud services like Google/Box

27  typically retain certain transactional information about the creation and use of each

28

1   account on their systems.  This information can include the date on which the account
2   was created, the length of service, records of log-in (i.e., session) times and durations, the
3   types of service utilized, the status of the account (including whether the account is
4   inactive or closed), the methods used to connect to the account (such as logging into the
5   account via the provider's website), and other log files that reflect usage of the account.
6   In addition, these providers often have records of the Internet Protocol address ("IP
7   address") used to register the account and the IP addresses associated with particular
8   logins to the account, which can help to identify the computers or other devices that were
9   used to access the account.

10      42.     In my training and experience, in some cases, cloud services account users
11   will communicate directly with their service provider about issues relating to the account,
12   such as technical problems, billing inquiries, or complaints from other users.  Cloud
13   services providers like Google/Box typically retain records about such communications,
14   including records of contacts between the user and the provider's support services, as well
15   records of any actions taken by the provider or user as a result of the communications.  In
16   my training and experience, such information may constitute evidence of the crimes
17   under investigation because, for example, the information can be used to identify the
18   account's user or users.

19                      **FACEBOOK TECHNICAL BACKGROUND**

20      43.     Facebook owns and operates a free-access social networking website of the
21   same name that can be accessed at hyyp://www.facebook.com.  Facebook allows it users to
22   establish accounts with Facebook, and user can then use their accounts to share written
23   news, photographs, videos, and other information with other Facebook users, and
24   sometimes with the general public.

25      44.     Facebook asks users to provide basic contact information to Facebook, either
26   during the registration process or thereafter.  This information may include the user's full
27   name, birth date, contact e-mail addresses, physical address (including city, state, and zip

28

20

1   code), telephone numbers, screen names, websites, and other personal identifiers.
2   Facebook also assigns a user identification number to each account.

3      45.    Facebook users can select different levels of privacy for the communications
4   and information associated with their Facebook accounts.  By adjusting these privacy
5   settings, a Facebook user can make information available only to himself or herself, to
6   particular Facebook users, to all Facebook users, or to anyone with access to the Internet,
7   including people who are not Facebook users. Facebook accounts also include other
8   account settings that users can adjust to control, for example, the types of notifications
9   they receive from Facebook.

10     46.    Facebook users may join one or more groups or networks to connect and
11   interact with other users who are members of the same group or network.  A Facebook
12   user can also connect directly with individual Facebook users by sending each user a
13   "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two
14   users will become "Friends" for purposes of Facebook and can exchange communications
15   or view information about each other.  Each Facebook user's account includes a list of
16   that user's "Friends" and a "Mini-Feed," which highlights information about the user's
17   "Friends," such as profile changes, upcoming events, and birthdays.

18     47.    Facebook users can create profiles that include photographs, lists of personal
19   interests, and other information.  Facebook users can also post "status" updates about
20   their whereabouts and actions, as well as links to videos, photographs, articles, and other
21   items available elsewhere on the Internet. Facebook users can also post information
22   about upcoming "events," such as social occasions, by listing the event's time, location,
23   host, and guest list.  A particular user's profile page also includes a "Wall," which is a
24   space where the user and his or her "Friends" can post messages, attachments, and links
25   that will typically be visible to anyone who can view the user's profile.

26     48.    Facebook has a Photos application, where users can upload an unlimited
27   number of albums and photos.  Another feature of the Photos application is the ability to
28

21

"tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photo print" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

49. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

50. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

51. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

52. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

53. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

54. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

55. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

56. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

57. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning

1    subscribers and their use of Facebook, such as account access information, transaction

2    information, and account application.

3                              **REQUEST FOR SEALING**

4            58.    It is respectfully requested that this Court issue an order sealing, until

5    further order of the Court, all papers submitted in support of this application, including

6    the application and search warrant. I believe that sealing this document is necessary

7    because the items and information to be seized are relevant to an ongoing investigation

8    run by HSI. As such, premature disclosure of the contents of this affidavit and related

9    documents may alert individuals associated with the TARGET ACCOUNTS. This could

10   lead to the destruction of evidence, which would have a significant and negative impact

11   on this investigation.

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

## CONCLUSION

59.     Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that on the computer systems in the control of Google, Box, and Facebook there exits evidence, instrumentalities, contraband and/or fruits of a crime.

I swear under penalty of perjury that the foregoing information is true and correct, to the best of my knowledge, information and belief.


JOSE OCHOA
Special Agent
Homeland Security Investigations

Approved as to form.


Josh Franklin Sigal
Special Assistant United States Attorney

Subscribed and sworn to before me this
_____ day of December, 2015


Hon. Carolyn K. Delaney
United States Magistrate Judge
Eastern District of California
Sacramento, California

# ATTACHMENT A-2

## LOCATION TO BE SEARCHED

This warrant applies to information associated with the following Box accounts, and the associated Box services identified below, that are stored at premises controlled by Box, a company that accepts service of legal process at 4440 El Camino Real, Los Altos, California (the "Target Accounts").

| Target Account | Services |
|---|---|
| Associated Email Addresses:<br>mwinton80@gmail.com<br>misterbullet6@gmail.com | Android, File Sharing Services, and Cloud Storage Services |

## ATTACHMENT B-2

## ITEMS TO BE SEIZED

### I. Information to be disclosed by Box, Inc. ("Box")

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of Box, including any communications, records, files, logs, or information that has been deleted but is still available to Box, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Box is required to disclose the following information to the government for each account or identifier listed in Attachment A-2:

a.  The contents of all emails, chats, or stored communications associated with the account, including stored or preserved copies of emails or chats sent to and from the account, draft emails, deleted emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email or chat;

b.  All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative or secondary email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers);

c.  All files or "backups" associated with Android accounts and services or other cell phones linked to the account.

d.  Any records identifying other communication accounts or phone numbers linked to Android, or the other identified services.

e. Any and all stored images or video linked to the services, to include metadata included by the customer.

f. Internet search and browsing history and location history associated with the account.

g. All records pertaining to communications between Box and any person regarding the account, including contacts with support services and records of actions taken.

h. All records pertaining to devices associated with the accounts to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

i. All records pertaining to this Box account and other associated accounts.

## II. Information to be seized by the government

The following items, which may be evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252(a) and 2252A(a) and/or contraband are to be searched and/or seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

1. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form;

2. Any child erotica;

3. Any information pertaining to any individual's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;

4. Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

5. All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in

33

sexually explicit conduct, in any format, downloaded and possessed by the target computer(s);

6. Any items, images, documents, communications, records, and information pertaining to the possession, receipt, transmission, sale, purchase, trade, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct that affected or were transmitted or received via computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail, including:

a. Envelopes, letters, and other correspondence including, electronic mail, chat logs, and electronic or other instant messages, establishing possession, access to, affect on, or transmission through interstate or foreign commerce, including by United States mail or via computer, of child pornography or visual depictions of minors engaged in sexually explicit conduct.

34

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| ) | Case No. |
| **Box, Inc. accounts** ) | |
| ) | 2:15 - SW - . 6 2 2 — CKD |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

# SEALED

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B-2, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ December 14, 2015 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for _____ days *(not to exceed 30)* ☐  until, the facts justifying, the later specific date of _____

Date and time issued:   12/1/2015  2:58 pm          *Judge's signature*

City and state:     Sacramento, California          Carolyn K. Delaney, U.S. Magistrate Judge
                                                    *Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
|  |  |  |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                              Date

## ATTACHMENT A-2

## <u>LOCATION TO BE SEARCHED</u>

This warrant applies to information associated with the following Box accounts, and the associated Box services identified below, that are stored at premises controlled by Box, a company that accepts service of legal process at 4440 El Camino Real, Los Altos, California (the "Target Accounts").

| Target Account | Services |
|---|---|
| Associated Email Addresses: mwinton80@gmail.com misterbullet6@gmail.com | Android, File Sharing Services, and Cloud Storage Services |

27

## ATTACHMENT B-2

## ITEMS TO BE SEIZED

### I. Information to be disclosed by Box, Inc. ("Box")

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of Box, including any communications, records, files, logs, or information that has been deleted but is still available to Box, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Box is required to disclose the following information to the government for each account or identifier listed in Attachment A-2:

a. The contents of all emails, chats, or stored communications associated with the account, including stored or preserved copies of emails or chats sent to and from the account, draft emails, deleted emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email or chat;

b. All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative or secondary email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers);

c. All files or "backups" associated with Android accounts and services or other cell phones linked to the account.

d. Any records identifying other communication accounts or phone numbers linked to Android, or the other identified services.

32

e.  Any and all stored images or video linked to the services, to include metadata included by the customer.

f.  Internet search and browsing history and location history associated with the account.

g.  All records pertaining to communications between Box and any person regarding the account, including contacts with support services and records of actions taken.

h.  All records pertaining to devices associated with the accounts to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

i.  All records pertaining to this Box account and other associated accounts.

## II.  Information to be seized by the government

The following items, which may be evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252(a) and 2252A(a) and/or contraband are to be searched and/or seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

1. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form;

2. Any child erotica;

3. Any information pertaining to any individual's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;

4. Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

5. All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in

33

1   sexually explicit conduct, in any format, downloaded and possessed by the

2   target computer(s);

3   6. Any items, images, documents, communications, records, and information

4   pertaining to the possession, receipt, transmission, sale, purchase, trade, or

5   distribution of child pornography or visual depictions of minors engaged in

6   sexually explicit conduct that affected or were transmitted or received via

7   computer, some other facility or means of interstate or foreign commerce,

8   common carrier, or the U.S. mail, including:

9   a. Envelopes, letters, and other correspondence including, electronic mail,

10   chat logs, and electronic or other instant messages, establishing possession,

11   access to, affect on, or transmission through interstate or foreign commerce,

12   including by United States mail or via computer, of child pornography or visual

13   depictions of minors engaged in sexually explicit conduct.